

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

JUL 18 2008
JuL 18 2008
Judge David H. Coar
United States District Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 195 |
| | ) | |
| VICTOR STURMAN | ) | Judge David H. Coar |
| | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant VICTOR STURMAN, and his attorney, STEVE KOHN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with three counts of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges defendant with engaging in a scheme

to defraud BP Amoco ("BP") of money, property and its intangible right of honest services, and to obtain money and property from BP by means of materially false and fraudulent pretenses, representations, promises and omissions, in violation of Title 18, United States Code, Section 1343 and 1346. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.       Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Defendant acknowledges that beginning in or about January 1992 and continuing thereafter until at least in or about November 2003, in the Northern District of Illinois, Eastern Division and elsewhere, he devised, intended to devise, and participated in a scheme to defraud BP of money, property and its intangible right of honest services, and to obtain money and property from BP by means of materially false and fraudulent pretenses, representations, promises and omissions, in connection with a series of false invoices submitted by S & S Design Company ("S&S Design") and paid by BP. On or about March 6, 2003, at Warrenville, in the Northern District of Illinois, defendant for the purpose of executing and attempting to execute the above-described scheme, did knowingly cause to be transmitted in interstate commerce from Warrenville, Illinois, to Tulsa, Oklahoma, by means of wire and radio communications, certain writings, signs, and signals, namely:

2

a facsimile transmission of a check request form for payment of Invoice #010704 from S&S Design in the amount of $49,031.25, in violation of law.

More specifically, defendant acknowledges that at times material to the indictment:

a.        BP Amoco ("BP") was a New York corporation with offices located in Chicago, Illinois and Warrenville, Illinois. In 1998, BP was created out of the merger of British Petroleum P.L.C., a United Kingdom corporation, and Amoco Corporation, a Delaware corporation.

b.        Defendant was an employee of BP.  Defendant was the Comptroller for Amoco Corporation and then BP from 1992 until he retired in 2004. Defendant was originally hired by Amoco in 1966 and continued to work for the company after it merged with British Petroleum. As the Comptroller, defendant was responsible for capital investment accounting for the company throughout the Western Hemisphere, including budgeting for, approving and accounting for property acquisitions, renovations and management. In addition, defendant had authority on his own to approve the payment of certain invoices.

c.        S & S Design Company ("S&S Design") was a fictitious architectural design and engineering corporation created by Sturman to bill BP for design services that were never rendered. S & S Design did not have an office. Instead, S & S Design had a mailing address of P.O. Box 811561 in Chicago, Illinois. Defendant opened and maintained the P.O. Box used by S&S Design to receive correspondence and payment of invoices.  In addition, defendant created a corporate checking account in the name of S&S Design at Chase Bank for the purpose of depositing payment from BP and issuing checks to himself.

Beginning in or about January 1992 and continuing thereafter until at least in or about November 2003, defendant devised a scheme to defraud BP of money, property and its intangible

3

right of honest services, and to obtain money and property from BP by means of materially false and fraudulent pretenses, representations, promises and omissions, by submitting false invoices for architectural design and engineering work from S & S Design to be paid by BP. It was part of the scheme that in 1992, defendant opened a post office box in the name of S & S Design in order to receive payment for invoices billing BP for architectural and engineering work that was never requested, approved or performed. It was further part of the scheme that STURMAN would prepare S&S Design invoices for submission to Amoco Corporation and then BP for architectural design and engineering services that had not been commissioned or rendered. During the course of the scheme, defendant sent dozens of false invoices from S&S Design to Amoco Corporation and then BP for payment. For example, on or about January 21, 2003, defendant sent a false invoice (#010704) for \$49,031.25 from S&S Design to Amoco Properties, Inc., 28301 Ferry Road, Warrenville, Illinois 60555. The invoice purported to be for "Architectural Services rendered to date for the 702 BLDG. complex for the restacking of floor 1-3." No such services had been rendered and the invoice was entirely false. In addition, on or about August 12, 2003, defendant sent another false invoice (#90018) for \$50,775.50 from S&S Design to Amoco Properties, Inc., 4101 Winfield Road, Warrenville, Illinois 60555. That invoice purported to be for "Additional Architectural Services rendered for the Denver Office Bldg. located at 1670 Broadway for the BP Oil Stream restack to consolidate floor 4." The services billed in this invoice had never been rendered and the invoice was simply a means to obtain money from BP under false pretenses.

It was further part of the scheme that after an invoice from S & S Design was received by Amoco or BP, defendant would use his authority as Comptroller to authorize payment of the invoice even though he knew that no services had been rendered and the invoice was fraudulent.

4

Defendant would direct his assistant, INDIVIDUAL A, to prepare a check request form so that a check would be prepared to pay the invoice. Defendant would provide information to INDIVIDUAL A about the internal billing code that should be used to charge the work to a particular division of BP. Once INDIVIDUAL A had prepared the check request form, defendant would sign and date the form authorizing payment of the invoice. When defendant authorized payment of the S&S Design invoices, he knew that they were false and that no services had been rendered. INDIVIDUAL A would then send the check request form via facsimile from Warrenville, Illinois to BP's check processing center in Tulsa, Oklahoma.

As a result of defendant's fraud scheme, BP incurred a loss of more than $3 million. Once checks were issued to pay the S&S Design invoices, defendant would have them sent to the P.O. Box he set up in the name of S&S Design or would pick them up from BP's offices. Defendant would then deposit the checks in the S&S Design checking account that he had opened at Chase Bank. Defendant would then use the proceeds deposited into this account to make wire transfers into his personal bank accounts, to make cash withdrawals and to issue checks from the S&S Design checking account to himself and others, all for the purpose of paying personal expenses, including expenses related to improvements on his house located at 1330 45th Avenue, Kenosha, Wisconsin.

It was further part of the scheme that defendant used the United States mail, commercial interstate couriers and the interstate wires to execute the scheme. For example, defendant had his assistant send check requests for payment of invoices to others by interstate facsimile. Payment from BP was made by means of interstate wire transfers of funds and delivery of checks by commercial interstate carriers. In addition, defendant sent invoices from S&S Design using the United States mail.

5

7.     The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     Count One carries a maximum sentence of 20 years imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than two and no more than three years, as well as any restitution ordered by the Court.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

6

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for this offense is 7 pursuant to Guideline § 2B1.1(a)(1).

ii.    The base offense level is increased 18 levels pursuant to Guideline § 2B1.1(b)(1)(J), because the offense involved a loss of more than $2,500,000.00.

iii.    The base offense level is increased 2 levels pursuant to Guideline § 2B1.1(b)(9)(C) because the offense involved sophisticated means.

iv.    The base offense level is increased another 2 levels pursuant to Guideline § 3B1.3 because the defendant abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense.

v.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

7

vi.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, defendant has no known criminal history. Therefore, the defendant's criminal history points equal 0, the defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level for Count One is 26, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts

8

and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.    Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        f.       Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.    The government agrees to recommend that sentence be imposed within the applicable guidelines range.

12.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

13.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Forfeiture

15.     The indictment charges that defendant is liable to the United States for approximately $3.1 million, which funds are subject to forfeiture because those funds constitute proceeds of the violations alleged in Count One.  Further, defendant has subjected real and personal property to forfeiture, namely the property located at 1330 45th Avenue, Kenosha, Wisconsin, because that property constitutes or is derived from proceeds traceable to the fraud scheme in Count One.  By entry of a guilty plea to Count One of the indictment, defendant acknowledges that the funds and property identified above are subject to forfeiture.

16.     Defendant agrees to the entry of a forfeiture judgment in the amount of $3.1 million, in that these funds are subject to forfeiture.  Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and further agrees to the seizure of these funds so that these

10

funds may be disposed of according to law. Defendant understands that the government will satisfy the forfeiture judgment through the collection of substitute assets, including but not limited to the property located at 1330 45th Avenue, Kenosha, Wisconsin, to the extent that proceeds are not otherwise available to satisfy the forfeiture judgment.

17.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. However, the government agrees that any funds paid toward restitution shall reduce the amount owed in satisfaction of the forfeiture judgment.

**Presentence Investigation Report/Post-Sentence Supervision**

18.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the

probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

## Nature of Plea Agreement

21.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 195.

12

22.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

13

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could

14

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

     vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

    c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25. Regarding restitution, the defendant acknowledges that the offense of conviction is an offense against property that resulted in a loss of approximately $3,100,000

to BP Amoco, and that, pursuant to Title 18, United States Code, Section 3663A(a)(1), the Court must order defendant to make restitution in that amount, minus any credit for funds repaid prior to sentencing. The defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which restitution is to be paid in this case. The defendant agrees to provide full and truthful information to the Court and United States Probation Officer regarding all details of his economic circumstances in order to determine the proper restitution schedule according to which the defendant may be ordered to pay. The defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

## Conclusion

26.   Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27.   Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require

16

defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

17

29.    Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _7 - 18 - 08_

PATRICK J. FITZGERALD
United States Attorney

VICTOR STURMAN
Defendant

EDWARD SISKEL
Assistant U.S. Attorney

~~STEVE KOHN~~ JONATHAN SMITH
Attorney for Defendant

18